# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

CIVIL ACTION NO. 1:26-cv-453

| | |
|---|---|
| SMITHLINE FAMILY TRUST II,<br><br>    Plaintiff,<br><br>    v.<br><br>JAMES EDGAR BROYHILL, II;<br>MELANIE PENNELL BROYHILL;<br>ANVIL VENTURE GROUP, L.P. a/k/a<br>ANVIL VENTURE GROUP, LP a/k/a<br>ANVIL VENTURES GROUP, LP; ANVIL<br>MANAGEMENT, LLC; and AMENDED<br>AND RESTATED JAMES T. BROYHILL<br>REVOCABLE TRUST,<br><br>    Defendants. | **COMPLAINT** |

Plaintiff, Smithline Family Trust II ("Smithline"), for its complaint against defendants James Edgar Broyhill, II ("Ed Broyhill"), Melanie Pennell Broyhill ("Mrs. Broyhill") (with Ed Broyhill, the "Broyhills"), Anvil Venture Group, L.P. a/k/a Anvil Venture Group, LP, a/k/a Anvil Ventures Group LP ("Anvil Venture"), Anvil Management, LLC ("Anvil Management"), and the Amended and Restated James T. Broyhill Revocable Trust ("JTB Trust") (collectively, the "Broyhill Parties"), alleges as follows:

## NATURE OF THE ACTION

1.    This action arises out of a fraud orchestrated by Ed Broyhill. The son of the late United States Senator James Thomas "Jim" Broyhill ("Senator Broyhill"), Ed Broyhill is the current North Carolina Republican National Committeeman, a fundraiser, and an heir to the Broyhill family furniture fortune. Ed Broyhill also currently serves as the Chairman of the Board of the Patriot Foundation.

1

2. Trading on his family's name and legacy, Ed Broyhill fraudulently induced Smithline to lend $2.5 million to him and his wife, Mrs. Broyhill ("Loan"). The Broyhills purportedly used the funding provided by Smithline to repay others, including family members and friends.

3. To obtain the Loan, Ed Broyhill provided Smithline altered or misleading financial and account statements, including altered investment account statements from Goldman Sachs & Co. LLC ("Goldman Sachs") and UBS Financial Services Inc. ("UBS").

4. The Loan documents required that the securities held in the UBS account, which were pledged to secure the Loan, must exceed $12 million at all times. The Loan documents further required that the balance of the Goldman Sachs account, which Ed Broyhill represented to be over $11.3 million, must exceed $2 million at all times.

5. Smithline discovered Ed Broyhill's fraud only after the Broyhills received the Loan proceeds. The Broyhills, as required by the Loan documents, provided brokerage statements reporting the balances and contents of the Goldman Sachs and UBS accounts. These statements contained noticeable alterations, and a UBS representative stated that they did not appear to be valid UBS statements.

6. The Broyhills have never disputed these allegations and have refused to allow Smithline to obtain statements directly from UBS and Goldman Sachs. Nor have the Broyhills taken any meaningful steps to repay Smithline's Loan despite Smithline's repeated demands. Smithline has no option but to seek court intervention to recover Smithline's damages arising from the Broyhills' failure to repay the Loan.

2

7. Smithline is, and at all times relevant to this action was, a Grantor Trust organized and existing under the laws of the State of New York, with its Trustee William Smithline domiciled in and a resident of the State of New York.

8. Upon information and belief, defendant Ed Broyhill is domiciled in and a resident of Winston-Salem, Forsyth County, North Carolina.

9. Upon information and belief, defendant Mrs. Broyhill is domiciled in and a resident of Winston-Salem, Forsyth County, North Carolina.

10. Upon information and belief, defendant JTB Trust is a North Carolina trust. Upon information and belief, Ed Broyhill is the sole trustee of the JTB Trust.

11. Upon information and belief, defendant Anvil Venture is a limited partnership organized and existing pursuant to the laws of North Carolina with its principal place of business in Winston-Salem, Forsyth County, North Carolina.

12. Upon information and belief, defendant Anvil Management is a limited liability company organized and existing pursuant to the laws of North Carolina with its principal place of business in Winston-Salem, Forsyth County, North Carolina.

13. Upon information and belief, Ed Broyhill is the sole member and manager of Anvil Management.

14. Upon information and belief, the JTB Trust, Ed Broyhill, and Anvil Management are the partners of Anvil Venture. Anvil Management is listed as Anvil Venture's sole general partner, and in turn is controlled by Broyhill in his capacity as Manager of Anvil Management.

3

<strong><u>JURISDICTION AND VENUE</u></strong>

15. Pursuant to 28 U.S.C. § 1332, this Court has jurisdiction because no plaintiff is a citizen of the same state as any defendant and the amount in controversy exceeds $75,000.00; for purposes of diversity jurisdiction, all defendants are citizens of North Carolina, and the sole plaintiff is a citizen of New York.

16. This Court has personal jurisdiction over Ed Broyhill, Mrs. Broyhill, Anvil Venture, Anvil Management, and the JTB Trust because they are all domiciled and reside in the state of North Carolina.

17. Pursuant to 28 U.S.C. § 1391(b)(1), (2), (c)(1), and (c)(2), venue in this Court is proper because all defendants reside in the State of North Carolina, all defendants are residents of this district, and a substantial part of the events or omissions giving rise to the claims occurred in this District.

<strong><u>FACTS</u></strong>

<em>CFG Introduces Smithline to the Broyhills</em>

18. In September 2025, Carofin, LLC and/or its affiliates Carolina Financial Group, LLC and/or Carolina Financial Securities, LLC, (collectively "CFG"), a registered broker focused on direct private investments, presented Smithline with the opportunity to lend money to its long-time clients, Ed and Mrs. Broyhill.

19. CFG's principal offices are located in North Carolina.

20. According to CFG, the Broyhills sought funding to refinance $9.0 million in debt to recapitalize an outstanding loan and provide capital for a business venture. CFG told Smithline that the Broyhills had a high net worth but lacked immediate liquidity to repay certain indebtedness and fund that business venture.

4

21. CFG described the Broyhill family as "among North Carolina's most prominent, with roots in business and national politics since the 1950s."

22. CFG described Ed Broyhill as a "well established borrower with a strong credit background," and vouched for his financial wherewithal. CFG further noted that Ed Broyhill is "a third-generation family leader," and now holds "full ownership of Anvil Ventures, LP."

23. CFG also informed Smithline that Ed Broyhill was to inherit substantial assets from the probate of the estate of his father, Senator Broyhill. Senator Broyhill's probate was allegedly delayed by a pending claim. CFG estimated that the claim would be resolved by the end of 2025 or early 2026.

24. On September 18, 2025, CFG provided Smithline with a document entitled "Ed Broyhill Statement of Financial Condition as of August 27, 2025" (the "Financial Statement"). The Financial Statement contained Ed Broyhill's signature and reported Ed Broyhill's net worth as $23,256,167.80, which included, among other things, $11,265,500.00 in investments held at Goldman Sachs and $12,366,714.04 in investments held at UBS.

25. On September 26, 2025, Smithline had an introductory call with Ed Broyhill. During the call, Ed Broyhill echoed what CFG told Smithline: that the Broyhills needed funds to repay other personal indebtedness and to have working capital for various business, personal, and political pursuits.

26. During the call, Ed Broyhill went to great lengths to detail his family wealth, his political and business ties, and his purported vast fortune. He discussed, among other things, his ties to Wake Forest University and his father's former positions in the United States Congress.

27. To bolster Ed Broyhill's credibility, CFG highlighted, among other things, Ed Broyhill's ties to the North Carolina Republican Party. In fact, the North Carolina Republican

5

Party's website identifies Ed Broyhill as its National Committeeman, describes him as "one of America's premier entrepreneurs," and lauds his "accomplished background in furniture manufacturing, retail, High Tech, and investment banking." *See* https://www.nc.gop/5511786 (last visited May 15, 2026).

28.     On or about October 2, 2025, to support the Broyhills' Loan request, Ed Broyhill, through CFG, provided certain due diligence documents to Smithline.

29.     In the due diligence materials, Ed Broyhill provided Smithline a July 2025 statement for an Anvil Venture brokerage account held at Goldman Sachs ("July 2025 Goldman Statement").

30.     The July 2025 Goldman Statement indicated that, for the period ending July 31, 2025, Anvil Venture held a money market fund totaling $11,265,500.00.

31.     In further support of his purported wealth, Ed Broyhill provided Smithline with various account statements and screenshots of account statements for UBS accounts. The screenshots indicated that, between June 2025 through November 2025, an Anvil Venture account at UBS maintained balances above $12,000,000.00.

32.     On October 7, 2025, a representative for the estate of Senator Broyhill confirmed to Smithline that Ed Broyhill had already inherited some of his father's vast fortune and stood to inherit the balance of that fortune once his father's estate closed.

33.     CFG and Ed Broyhill told Smithline that Ed Broyhill would repay any outstanding balance on the loan within 45 days of the date the probate of Senator Broyhill's estate closed.

*Smithline Agrees to Loan $2.5 Million to the Broyhills*

34.     On November 17, 2025, in reliance on, among other things, Ed Broyhill's representations, verbal assurances from CFG that the Broyhills would repay Smithline, the

6

Financial Statement, the November 2025 Balance Sheet identified below, Schedule 4(a) (as defined below), the July 2025 Goldman Sach's Statement, various other account statements and screenshots of the same, representations in the Security Agreement (as defined below) and associated Loan documents, including a subscription agreement ("Subscription Agreement"), and the terms in the Security Agreement, the Promissory Note (as defined below) and associated documents, Smithline agreed to loan the Broyhills $2.5 million.

35. On November 17, 2025, Smithline, Ed Broyhill, and Mrs. Broyhill executed, among other things, a Security Agreement ("Security Agreement"), a 2025A Secured Promissory Note in the Principal Amount of $2.5 million ("Promissory Note"), and a "James Edgar Broyhill, II & Melanie P. Broyhill 2025A Secured Promissory Note Subscription Agreement" ("Subscription Agreement"). True and correct copies of the Security Agreement, the Promissory Note, and the Subscription Agreement are attached as **Exhibit A, Exhibit B,** and **Exhibit C**, respectively.

36. Pursuant to the Promissory Note, interest on the principal balance of the loan accrued at the rate of eighteen percent (18%) per year.

37. The Broyhills agreed to make monthly payments of accrued interest beginning January 2, 2026, and on the first day of each calendar month thereafter, with the entire principal balance and accrued interest to be repaid in full by November 17, 2026.

38. The Promissory Note provided that the Broyhills "shall repay any outstanding principal and accrued but unpaid interest" no later than the 45th calendar day after entry of "an order to discharge the Estate of James T. Broyhill[.]" **Ex. B.** ¶ 6.

39. The Broyhills' repayment obligations were guaranteed by Anvil Venture and the JTB Trust. *See* **Ex. B** ¶ 7.

40. To secure the Broyhills' repayment and performance of the Promissory Note when due, the Broyhills granted Smithline a security interest in Anvil Venture's account at UBS and the equity interests in Anvil Venture and Anvil Management. **Ex. B ¶** 4.

41. In the Security Agreement, the Broyhill Parties represented and warranted that they had, by way of Anvil Venture, "good, indefeasible and merchantable title to, and ownership of" certain collateral, including the assets reflected in Schedule 4(a) of the Security Agreement ("Schedule 4(a)").

42. Schedule 4(a) reflected over $12,000,000.00 in assets held in the UBS account.

43. In the Subscription Agreement, the Broyhills represented and warranted that an attached balance sheet represented the Broyhills financial statement (the "November 2025 Balance Sheet") and that they had good and marketable title to all assets listed thereon.

44. According to the November 2025 Balance Sheet, as of November 13, 2025, Ed Broyhill had a net worth of $22,665,133.12. According to the November 2025 Balance Sheet, Ed Broyhill held investments at Goldman and UBS, through Anvil Venture, totaling $23,561,855.29.

45. The Broyhill Parties also represented and warranted that all representations and warranties made by them and their guarantors in the Loan documents were "true and correct in all respects[.]" **Ex. A ¶** 9(e).

46. On December 10, 2025, as required by the Security Agreement, CFG forwarded to Smithline the Anvil Venture statements for the brokerage accounts held at Goldman Sachs and UBS for the period ending November 30, 2025 (respectively, "November 2025 Goldman Statement" and "November 2025 UBS Statement").

47. Upon information and belief, Ed Broyhill sent CFG the November 2025 Goldman Statement and November 2025 UBS Statement.

8

48. Smithline funded the principal balance of the Loan to an escrow account of an affiliate of CFG, and the Broyhills received and/or benefited from the proceeds. Upon information and belief, the proceeds of the Loan were used to make the payments set forth in Section 3(a)(i) of the Security Agreement.

49. On January 2, 2026, the Broyhills made the first interest payment under the Promissory Note.

50. On January 16, 2026, as required by the Security Agreement, CFG forwarded to Smithline an email from Ed Broyhill attaching Anvil Venture's UBS brokerage statement for the period ending December 31, 2025 ("December 2025 UBS Statement").

51. Upon information and belief, Ed Broyhill sent the December 2025 UBS Statement to CFG.

52. On January 21, 2026, CFG also forwarded to Smithline a Goldman Sachs brokerage statement for the period ending December 31, 2025 ("December 2025 Goldman Sachs Statement").

53. Upon information and belief, Ed Broyhill sent the December 2025 Goldman Sachs Statement to CFG.

*Smithline Discovers Broyhill's Fraud*

54. The November 2025 UBS Statement received by Smithline on December 10, 2025, revealed that within 10 days of receiving the loan proceeds, the Broyhills withdrew $284,851.80 from the UBS brokerage account, in direct violation of the Security Agreement.

55. The Broyhills' unauthorized withdrawal constituted an Event of Default under the Security Agreement and the Promissory Note. *See* **Ex. A** ¶ 11(b); **Ex. B** ¶ 5(b).

9

56. In response to the unauthorized withdrawal, Smithline reviewed all the documents and information provided by the Broyhills and identified discrepancies.

57. For instance, the July 2025 Goldman Statement identifies as account representatives two individuals who were not, as of July 2025, employed by Goldman Sachs. The July 2025 Goldman Statement, the November 2025 Goldman Statement, and the December 2025 UBS and Goldman Sachs Statements contain inconsistent fonts, formatting and line spillovers, unusual text boxes around numbers and a missing dollar sign next to dollar amounts. The July 2025 Goldman Sachs Statement also has inconsistent dates.

58. Further, various statements provided to Smithline contained anomalies like inconsistent fonts, inconsistent metadata, and metadata showing that they were created by an open-source Java Script PDF library used to modify pdf documents.

59. When contacted about the November 2025 UBS Statement and December 2025 UBS Statement, UBS responded that the account statements did not appear to be valid UBS statements.

60. Despite repeated requests, Ed Broyhill has refused to authorize UBS or Goldman Sachs to deliver authenticated account statements to Smithline.

*The Broyhills Fail to Repay the Loan*

61. On January 22, 2026, Smithline sent a Notice of Event of Default to the Broyhills and CFG setting forth the Broyhills' Events of Default under the Security Agreement and Promissory Note. Smithline demanded immediate repayment of the entire Principal Balance, interest through the loan's maturity date, and accrued default interest, which together totaled $2,914,383.56. A copy of Plaintiff's Notice of Event of Default is attached to this complaint as **Exhibit D**.

10

62.     On January 27, 2026, Smithline received one additional payment of $200,510.07 on behalf of the Broyhills.

## FIRST CLAIM FOR RELIEF: FRAUD
### (Against All Defendants)

63.     Smithline repeats and realleges each and every allegation contained in the foregoing paragraphs as though fully set forth herein.

64.     As provided in more detail above, there is evidence that someone altered the July 2025 Goldman Statement, the November 2025 UBS Statement, the November 2025 Goldman Sachs Statement, the December 2025 UBS Statement, and the December 2025 Goldman Sachs Statement.

65.     These statements were either sent by Ed Broyhill or sent on behalf of Ed Broyhill.

66.     The Financial Statement and November 2025 Balance Sheet report the UBS account and Goldman Sachs account as part of Ed Broyhill's net worth.

67.     The Financial Statement and November 2025 Balance Sheet report a net worth, as of August 2025 and November 2025, respectively, that exceeds the outstanding balance of the Loan by approximately $20 million.

68.     Despite purportedly having approximately $20 million above the outstanding balance of the Loan, the Broyhill Parties have refused to repay the Loan upon proper demand.

69.     Despite numerous requests, the Broyhill Parties have not provided Smithline with any process for authenticating the account statements with Goldman Sachs and UBS.

70.     Ed Broyhill prepared, or caused to be sent to Smithline, all the account statements referenced above.

11

71. Based on the facts and circumstances detailed above, Ed Broyhill made material misrepresentations to Smithline concerning the Broyhills' net worth, total assets, and the amount Ed Broyhill would receive upon the discharge of his late father's estate.

72. Ed Broyhill made these representations personally, as provided in those personal statements, and as the individual with purported authority over Anvil Venture, Anvil Management, and the JTB Trust.

73. Based on the facts and circumstances detailed above Ed Broyhill made material misrepresentations about the value of assets in the UBS account pledged to secure Smithline's Loan and the value of assets in the Goldman Sachs account, which the Broyhills identified as a source of repayment of the Loan.

74. Further, based on the facts and circumstances detailed above, Ed Broyhill made material misrepresentations in the Broyhills' personal financial statement and other documents provided to Smithline in due diligence and in the Loan documents and made material alterations to the UBS and Goldman brokerage statements to induce Smithline to make the Loan to the Broyhills.

75. Ed Broyhill's representations about the Broyhills' financial condition were material to Smithline's decision to make the Loan.

76. At the time the representations were made, Ed Broyhill knew they were false or made statements with reckless disregard for their truth.

77. In the Security Agreement, the Broyhills, Anvil Venture, Anvil Management, and the JTB Trust represented and warranted that Ed Broyhill's statements about the Broyhills' wealth were "true and correct in all respects[.]" **Ex. A ¶ 9(e).**

12

78. At the time of this representation, the Broyhills, Anvil Venture, Anvil Management, and the JTB Trust knew that Smithline was relying on false statements but nonetheless made such representation.

79. Alternatively, based on the facts and circumstances detailed above, the Broyhill Parties failed to disclose an accurate accounting of their assets when they signed the Security Agreement and all associated documents.

80. At that time, the Broyhill Parties knew that Smithline possessed inaccurate financial information and was relying on the information in funding the Loan.

81. The Broyhills, Anvil Venture, Anvil Management, and the JTB Trust provided misleading and inaccurate account statements and representations, or failed to correct such account statements and representations, for the purpose of acquiring the proceeds of the Loan.

82. In agreeing to extend the $2.5 million Loan to the Broyhills, Smithline reasonably relied on the false and misleading statements and documents.

83. Smithline reasonably relied on Ed Broyhill's statements given the Broyhills' purported wealth, community reputation, longstanding relationship with CFG—which vouched for their finances, ability to repay the Loan and reputation—and documents that supported those representations.

84. Smithline has sustained actual damages as a direct and proximate result of the Broyhills' fraudulent conduct, including loss of the $2.5 million principal loaned, unpaid monthly payments, interest (together with default interest), and consequential damages, in an amount to be determined at trial.

13

85. The Broyhill Parties' conduct was willful, wanton, and in reckless disregard of Smithline's rights, and evinces actual malice or conscious and intentional wrongdoing, warranting an award of punitive damages.

## SECOND CLAIM FOR RELIEF: FRAUD IN THE INDUCEMENT
### (Against Ed Broyhill, Anvil Venture, and Anvil Management)

86. Smithline repeats and realleges each and every allegation in the foregoing paragraphs as if fully set forth herein.

87. Based on the facts and circumstances detailed above, to induce Smithline to lend money to the Broyhills, Ed Broyhill misrepresented the value of the Broyhills' assets, including by altering documents purporting to demonstrate the balance of certain investment accounts securing repayment.

88. Based on the facts and circumstances detailed above, Ed Broyhill further misrepresented the amount that he expected to inherit from his late father's estate.

89. Based on the facts and circumstances detailed above, Ed Broyhill actively concealed the actual value of the Broyhills' assets, which was far lower than Ed Broyhill represented.

90. Ed Broyhill intended to deceive Smithline through these intentional and knowing misrepresentations and concealments.

91. Smithline reasonably relied on Ed Broyhill's intentional and knowing misrepresentations and concealments in agreeing to make the Loan to the Broyhills.

92. Ed Broyhill made these representations personally, as provided in those personal statements, and as the individual with authority over Anvil Venture, Anvil Management, and the JTB Trust.

14

93. Smithline was damaged by Ed Broyhill's intentional and knowing misrepresentations and concealments in an amount to be determined at trial but not less than the full accelerated indebtedness, together with continuing contractual interest, default charges, attorneys' fees, and costs.

### THIRD CLAIM FOR RELIEF: VIOLATION OF N.C. GEN. STAT. § 75-1.1 UNFAIR AND DECEPTIVE TRADE PRACTICES
(Against All Defendants)

94. Smithline repeats and realleges each and every allegation contained in the foregoing paragraphs as though fully set forth herein.

95. The Broyhills engaged in unfair and deceptive acts or practices by making materially false representations about the value of their assets and actively concealing the actual value of their assets.

96. Anvil Venture and the JTB Trust, through Ed Broyhill, engaged in unfair and deceptive acts or practices by making materially false representations about the value of the assets they held and actively concealing the actual value of the assets they held.

97. Ed Broyhill engaged in such acts through Anvil Management and Anvil Venture, representing such entities' assets for purposes of securing the Loan, and caused such materially false representations and concealment to be made to Smithline. Such conduct was in or affecting commerce, and occurred and related to a transaction originating from North Carolina.

98. The Broyhill Parties' unfair and deceptive acts and practices directly and proximately damaged Smithline in that had Smithline known the true value of the Broyhill Parties' assets, it would not have made the Loan to the Broyhills.

99. Pursuant to N.C. Gen. Stat. § 75-16.1, Smithline is entitled to recover its reasonable attorneys' fees for bringing this action.

15

100. Pursuant to N.C. Gen. Stat. § 75-16, Smithline is entitled to an award of treble damages.

101. Smithline has suffered actual and consequential damages in an amount to be proved at trial but not less than the full accelerated indebtedness, together with continuing contractual interest, default charges, attorneys' fees, and costs.

### FOURTH CLAIM FOR RELIEF: BREACH OF CONTRACT
**(Against James Edgar Broyhill, II and Melanie P. Broyhill)**

102. Smithline repeats and realleges each and every allegation contained in the foregoing paragraphs as though fully set forth herein.

103. Notwithstanding Ed Broyhill's fraudulent conduct, and in the alternative, the Broyhills are jointly and severally liable to Smithline for their breach of the Promissory Note and Security Agreement.

104. The Promissory Note and Security Agreement, independently and together, are a valid contract between Smithline and the Broyhills.

105. Smithline fully performed its obligations under the Promissory Note and the Security Agreement.

106. The Broyhills breached their obligations under the Promissory Note and the Security Agreement by, among other things, withdrawing from the UBS account without authority, providing false representation and warranties as to their financial condition, failing to provide accurate UBS and Goldman Sachs account statements as required by the Security Agreement, and refusing to pay all amounts owed pursuant to the Promissory Note despite Smithline's repeated demands.

107. Pursuant to the Security Agreement, Smithline is entitled to its reasonable attorneys' fees and costs for bringing this action. **Ex. A** ¶ 12(b)(i) & 13(a).

16

108.	As a direct and proximate result of the Broyhills' breaches, the Broyhills have damaged Smithline in an amount to be determined at trial but not less than the full accelerated indebtedness, together with continuing contractual interest, default charges, attorneys' fees, and costs.

### FIFTH CLAIM FOR RELIEF: BREACH OF GUARANTY
**(Against Anvil Venture Group, LP, Anvil Management, LLC, and
the Amended and Restated James T. Broyhill Revocable Trust)**

109.	Smithline repeats and realleges each and every allegation contained in the foregoing paragraphs as though fully set forth herein.

110.	As additional inducement to Smithline to make the Loan to the Broyhills, Anvil Venture and the JTB Trust each executed and delivered an Unlimited Unconditional Guaranty dated November 17, 2025 (each a "Guaranty" and collectively, the "Guarantees").

111.	Each Guaranty absolutely, irrevocably, and unconditionally guarantees the due and punctual payment of all obligations of the Broyhills under the Promissory Note and Security Agreement.

112.	Each Guaranty expressly provides that it is a guaranty of payment and not of collection, and that Smithline may proceed directly against the Guarantors without first pursuing the Broyhills.

113.	The Guarantees further provide that they shall not be discharged, impaired, or affected by any defense the Broyhills may have to payment and that Guarantors waive all defenses other than payment in accordance with the terms of the offering documents.

114.	The Guarantees constitute contracts between Smithline and the Guarantors.

115.	Smithline has fully performed its obligations under the Guarantees.

17

116. Due to the Broyhills' Event of Default under the Promissory Note and Security Agreement, all amounts due thereunder were accelerated by written notice dated January 22, 2026.

117. Accordingly, all obligations of the Broyhills became immediately due and payable and, pursuant to the Guarantees, are likewise immediately due and payable by Anvil Venture and the JTB Trust.

118. Despite demand, Anvil Venture and the JTB Trust have failed and refused to pay the accelerated indebtedness, breaching the Guarantees.

119. It appears that Anvil Venture is insolvent or unable to pay its debts.

120. Anvil Management is a general partner of Anvil Venture.

121. As such, Anvil Management is jointly and severally liable for the debts and obligations of Anvil Venture, including the obligations set forth in the Guaranty signed by Anvil Venture. *See* N.C. Gen. Stat. § 59-403; N.Y. P'ship Law § 98 (McKinney).

122. Accordingly, Anvil Management is liable as a Guarantor to Smithline for Anvil Venture's obligations under the Guaranty.

123. As a direct and proximate result of the Guarantors' breaches of the Guarantees, Smithline has been damaged in an amount not less than the full accelerated indebtedness, together with continuing contractual interest, default charges, attorneys' fees, and costs.

### SIXTH CLAIM FOR RELIEF: UNJUST ENRICHMENT (IN THE ALTERNATIVE)
**(Against James Edgar Broyhill, II and Melanie P. Broyhill)**

124. Smithline repeats and realleges each and every allegation contained in the foregoing paragraphs as though fully set forth herein.

125. Smithline brings this sixth claim for relief in the alternative to the fourth claim for relief.

126. The Broyhills have been unjustly enriched by the funds Smithline provided.

18

127. Smithline is entitled to repayment of the funds provided to the Broyhills, along with interest, default charges, attorneys' fees, and costs.

128. Permitting the Broyhills to retain the funds Smithline provided would be unjust.

## SEVENTH CLAIM FOR RELIEF: NEGLIGENT MISREPRESENTATION
### (IN THE ALTERNATIVE)
### (Against All Defendants)

129. Smithline repeats and realleges each and every allegation contained in the foregoing paragraphs as though fully set forth herein.

130. This seventh claim for relief is brought in the alternative to Smithline's first, second, third, fourth, and fifth claim for relief and/or Smithline is unable to recover under such claims.

131. Based on the facts and circumstances detailed above, to induce Smithline to make the Loan to the Broyhills, the Broyhill Parties inaccurately represented the value of the Broyhills' assets, including by altering documents purporting to demonstrate the balance of certain investment accounts securing repayment or providing assets which were a source for repayment.

132. Based on the facts and circumstances detailed above, Ed Broyhill further misrepresented the amount that he expected to inherit from his late father's estate.

133. Based on the facts and circumstances detailed above, the Broyhill Parties failed to correct the account statements and statements of net worth despite knowing that Smithline was relying on such statements and representations.

134. The Broyhill Parties intended for Smithline to rely on such account statements and representations regarding Ed Broyhill's net worth and the values of the UBS and Goldman accounts.

19

135. Based on the facts and circumstances detailed above, such statements and representations regarding Ed Broyhill's net worth and the value of the UBS and Goldman accounts were false.

136. The Broyhill Parties failed to exercise reasonable care or competence in communicating the false information.

137. Smithline reasonably relied on the false information in agreeing to make the Loan to the Broyhills.

138. Smithline was damaged by its reliance on the false information in an amount to be determined at trial but not less than the full accelerated indebtedness, together with continuing contractual interest, default charges, attorneys' fees, and costs.

## **PRAYER FOR RELIEF**

WHEREFORE, for all the foregoing reasons, plaintiff Smithline Family Trust II respectfully requests that this Court grant the following relief:

1. Judgment entered in favor of Smithline and against Defendants for actual damages, in an amount to be proven at trial, for each of its claims for relief;

2. Award punitive damages in favor of Smithline and against the Broyhills on account of Smithline's first and second claim for relief;

3. Award Smithline treble damages pursuant to N.C. Gen. Stat. § 75-16 for Defendants' unfair and deceptive acts and practices;

4. Award Smithline its reasonable attorneys' fees pursuant to N.C. Gen. Stat. § 75-16.1;

5. Award Smithline its reasonable attorneys' fees pursuant to the Promissory Note and Security Agreement;

20

6.      Award Smithline its reasonable court costs incurred in bringing this action;

7.      Award pre-judgment and post-judgment interest as permitted by law; and

8.      Grant such other and further relief as the Court deems just and proper.

## **<u>DEMAND FOR JURY TRIAL</u>**

Plaintiff demands a trial by jury on all claims and issues so triable.


Respectfully submitted, this the <u>15th</u> day of May, 2026.

ELLIS & WINTERS LLP

/s/ Dale R. Clemons

James M. Weiss (N.C. Bar No. 42386)
Dale R. Clemons (N.C. Bar No. 57780)
Siobhan Briley (N.C. Bar No. 64731)
ELLIS & WINTERS LLP
4131 Parklake Avenue, Suite 400
Raleigh, North Carolina 27612
P: (919) 865-7000
F: (919) 865-7010
james.weiss@elliswinters.com
dale.clemons@elliswinters.com
Siobhan.Briley@elliswinters.com